We move to the second case this morning, which is Crocroft v. HSBC Bank. Ms. Harrell, I wouldn't take this personally that everybody left when you came in. It was the excitement of ERISA. You may proceed. Good morning, Your Honors. May it please the Court. In our current economic situation in the United States, essentially since the 2008 mortgage meltdown, rarely does a day pass without there being some article or newsletter or conversation about... Could you just speak up a little bit? Yeah. It's the center microphone. Thank you. Rarely is there a day that does not go by that there's not some conversation about the mortgage meltdown, about credit crunch or credit crisis, and about mass attorney general settlements throughout statewide settlements against lenders and servicers regarding mortgage servicing abuses and things of that nature. But included in these conversations are also issues surrounding the securitization of mortgage loans. Securitization is a process in which a large group of mortgages are pooled together and they're converted into interest-bearing securities and sold to investors. Typically more commonly, they're sold to retirement plans, such as pension plans or 401Ks and which is one of the reasons why I'm here today, is to ask the Court to specifically look at issues regarding securitization. In the state of Illinois, the case, there's only one case that really deals with securitization and that is the case of Bank of America versus Bassman. And in Bassman, the Court looks at two issues. First, the Court decides whether or not a party on their face has standing to bring forth a claim that a loan was not transferred into a trust and therefore a trust cannot be, or a trustee cannot be the owner of that particular mortgage loan. And this is something that courts around the United States have looked at pretty strenuously in the last five to six years. Bassman, though, is actually the second court, the first court was the 6th District, Michigan. Bassman is the second court that actually says, well, you do have standing, but the issue is whether or not the conveyance is void versus voidable. And Bassman specifically looks at a number of New York cases to ascertain, a New York trustee, are void or voidable. And Bassman rules on the side that there's a conflict in the state of New York trust law in that some cases seem to apply the statute pretty directly and strenuously face-on-face for word-for-word for what the statute says and determine that, therefore, any ultra-virus act by a trustee is void. While at the same time, other New York courts say that, well, it would actually be voidable because beneficiaries or investors of the trust would have the right to ratify in the act of the trustee. This is where Bassman stops, though. So Bassman determines that, well, because there's a conflict and a trustee, I'm sorry, a beneficiary or investor could ratify an ultra-virus act of a trustee that, therefore, then it could be voidable. And they don't go beyond that. And what we're here today for is to ask the court to go a step beyond that to look at what is it specifically that would make such a conveyance void. Our position is that a conveyance that does not benefit the beneficiaries, a conveyance that no rational beneficiary would ratify should make the conveyance void. And our position is that notes, particularly notes and mortgages that are transferred in violation of a pooling and servicing agreement, which is the agreement that dictates how a trustee governs and how the trust operates, that a conveyance outside of what the terms of that agreement is should be void because no reasonable beneficiary would ever agree to ratify a situation. Why not? I don't understand why the beneficiaries would care, nor do I understand how the borrower is affected one way or the other by whether that transaction is ratified. The reason why the beneficiaries would care is because these are real estate mortgage trusts, okay? And these trusts are under the RIMIC laws of the Internal Revenue Code. RIMIC is the Real Estate Mortgage Investment Conduit, and under the Internal Revenue Code, if your trust is a RIMIC, you are receiving tax exemptions, 100 percent exemptions, you are receiving exemptions based upon that fact. So if there is a note that was never truly pooled into that trust, but you have received a tax benefit on it, if you turn around and ratify a later attempt by a trustee to actually pool that note into the particular trust, then you have a 100 percent tax liability. And no reason... Is the IRS actually imposing those kinds of liabilities in such cases? Are they opposing the... Are they imposing such liabilities where we have these kinds of issues about whether particular loans were timely conveyed into the trust? Yes, and the code is clear, it's a 100 percent liability. And as a beneficiary, that would completely wipe out my investment, and there would be no logical reason for me to ratify any trustee's action. So how is the borrower hurt by that transaction? The borrower is hurt because the borrower doesn't know who is actually responsible for the loan. The borrower doesn't know who to pay, or who has the right to collect. So if you have... Isn't that a different issue? No, I don't think so, because the borrower doesn't want to be put in a situation where different parties are coming after the borrower to collect... Of course not, but that doesn't... But if the transaction is merely voidable, as most courts have held, if there's a violation of the trust document, there shouldn't be any real dispute about who holds the rights to enforce the note and the mortgage. Well, I disagree with that, because you don't know what party may come back later and try to enforce that note. So for instance, let's say a party goes through a foreclosure proceeding, and the property is... There's a judgment of foreclosure, and the property is lost to foreclosure. But then another party comes along a year later and say, no, this is... We have the rights to this note. And then that party wants to enforce against that borrower. That party will still have the right to enforce if they can show that they're the actual note, the party with the right to collect on the note. And that's part of the problem here, is that there's nothing in the trust... There's nothing in these... Not only are these conveyance in themselves problematic, because how they're done, or our position is that they're not done. These notes are never actually conveyed into the trust. But the problem is the liability that it puts on or exposes to the borrower if another party, who actually is the proper party to enforce the note, comes back to collect against the borrower. Then a borrower is in a position where if they've already paid one party, or even already lost the property to another party, and then some other party comes along to collect, then a borrower's in a position that they have to pay twice. How often is that happening?  So theoretically, it's a concern. Yes, it's a major concern. I haven't seen any cases where somebody has lost a property in foreclosure and has then actually been held liable to another party. But under the laws, it's something that clearly can happen, as far as who has the rights to enforce. Under law, if one party has that right to enforce, and they come to enforce, then they would have that right to do so. Regardless of what transpired with the prior party. I think my time is up for rebuttal, so I'd like to reserve my time. Thank you. Thank you, Counselor. Trustee? May it please the Court, I'm Stephen Smith from Bryant Cave. I represent the Epelese here. There are several, there are four issues raised on appeal. I'm only going to address the remarks by counsel, unless the Court, Your Honors, have questions about the other three. I have some questions about trespass, but we can get to that when you're ready. Okay. That's great. But in terms of the securitization, and I'd like to pick up on your questions, Judge Hamilton, about why does the borrower care. The borrowers here, in their Third Amendment complaint, in the relief they seek in the quiet title claim, they ask the Court to void the bank's interest in the loan and give them the property outright. That's, and quiet title just doesn't work that way. There's always going to be a mortgagee out there who has a claim under the loan, and so the hypothetical that counsel raised about a property owner losing the property to foreclosure, and then sometime later a different lender or different creditor pops up and makes a claim, I've never heard that happening. I mean, she points to no cases where that has been discussed or where a debt is enforced against a borrower after a foreclosure. This just doesn't happen. There are no cases, and so I just don't see where that argument gets them any relief from this Court. In terms of the trespass claim, we could go to that if you'd like. Our position is that the, well, you know, they argue that the Illinois Mortgage Foreclosure Law somehow gives them a private right of action. That's not really the problem here. Okay. Let me set up my concern for you, Mr. Smith. As this was presented to the District Court, it seemed to be simply a question of consent under the terms of the mortgage. Paragraph 9 basically says if the property's been abandoned, the mortgagee can come in and secure the property, and that's the right that you all say was exercised, right? Well, also judge that they are in default. Yes, yes. And that's an independent. That was several months, yeah, they were several months into default by that time, right? Yes, they were, Judge. Okay. All right. And, but we also have this prohibition in Illinois law on self-help eviction, and in the Illinois, this wasn't discussed in your briefs, but it's actually addressed in fair detail in the criminal trespass laws, which provide civil and criminal defenses to mortgagees if you go in to secure or maintain an abandoned residential property. But there's also an elaborate statutory definition of abandoned residential property, and I'm not quite sure I see how you satisfy it. It's in 15, I'm sorry, 735 ILCS 5 slash 15 dash 1200.5. It's incorporated into the trespass statute, and I mean, you know, you don't have things like doors smashed, windows smashed, copper stripped, utilities terminated, et cetera. So how do you satisfy that definition? Well, Judge, our position is that there is sort of this, well, we were getting mail back from the post office saying that no one was there. So that's why we sent people out there. They could not find anyone around and secured the property. Now, but- But they removed, the property was locked, right? Yes, it was. So they took off those old locks and put new ones on, right? Yes. And I just want to make sure you're aware that the borrower came over and got in through the garage because he had a garage door open. So there was really, and I understand, you know, Judge Kennelly didn't like that argument on our part, and I understand why. But at least in terms of real life practical effect, the borrower was not put out of the property. But- I'm not, that's an underwhelming argument. I stand by your remarks, Judge, I respect your remarks. But the real thing that, the thing that I think gives us the right to secure the property is that they were in default. And that's what the mortgage says. If the borrower's in default under the mortgage agreement, we can secure the property. I know the mortgage says that, but we've also got the statute that says in essence these are non-waivable rights. Well I- You've got to have the expressed consent, but you also have to have abandoned property. Or at least a good faith belief that it's abandoned under this elaborate statutory definition that nobody's talked about. Right. And I apologize for not being more expressive in our briefs, but I think what the bank did was rely on the fact that the mortgage said that we could secure the property if there was a default. And there had been a default for several months. We were getting mail back from the post office. And so those are our positions. Yeah, well I mean one can question whether it's a good idea to have to wait until multiple windows are boarded up, smashed, etc. But that's the way the law is written. Right, right. And I will say I didn't focus on that particular provision of the IMFL that you just read, but in my reading of the statute as a whole, it seemed to me that what we were talking about was how to- if there's in a foreclosure proceeding, how do you- what rules have to govern? What rules have to be followed? But there's no private right of action that these borrowers can assert under the law. No, they don't need a private right of action. They've got a claim for trespass unless you meet the defense under the criminal statute. Well you mean they have a common law claim of trespass? Sure. Because of- Good old fashioned common law trespass. Right, right. They don't need the statute. The statute winds up shaping that claim. Right. Well, what I can say about that is that the statute, in my reading of it, governs what happens in a foreclosure proceeding and the rules that have to be followed in a foreclosure proceeding. This is all before the foreclosure? Yes, it does. Yes, Judge. So is your argument that you can come in before the foreclosure proceeding? Yes, Judge. Yes.  Well, under our- under the terms of our mortgage, yes, we can do that. So the only issue is default? Pardon me, Judge? The only basis in is default, if they are in default, as these were, obviously. Yes. And, of course, your comment, and this is tied in, and maybe I missed something earlier. You got letters back from the post office, but you were able to find the person to come and open the place up, right? No, Judge. We just changed the locks, and the borrower then came later and got into the house right away through the garage, because he had a garage door open. But the mortgage, you know, Section 9 says that, you know, if the borrower defaults, or the borrower has abandoned the property. So under the mortgage instrument, we, you know, abandonment was just one of the passive, one of the reasons we could secure the property. The other reason we could secure the property under Section 9 was if they were in default. I know that's what your mortgage says, but I'm telling you that I think Illinois, whether any of this was developed in the district court is an entirely different question. Right. Probably decisive. Right. But this is a much more nuanced problem under Illinois statutes that are intended to protect the peace, frankly, from this kind of self-help. And all I can say to that, Judge, is that the borrowers did not raise that before the district court. It was not developed at all in the district court. District court found, I believe, that the Section 9 governed. Yeah. So unless... So this is based, just to reiterate, this is based on default, you had a right to complain, because there was no issue raised about the statute in the district court. That's right, Judge. That's right. It was not argued by the plaintiffs or the appellants, so it wasn't addressed by the court. Right. So we'll rest on our briefs on all the issues, unless there are any other questions. I don't believe so. Thank you. Thank you. Ms. Harrell? How much time? You have six minutes, Ms. Harrell. Sorry, I'm looking for the section in our briefs where we do argue that there is a violation of the Illinois mortgage foreclosure law. Again, keep your voice up if you would. There is a section in our brief before the district court where we do argue a violation of the Illinois mortgage foreclosure law. The particular statute that Judge Hamilton cited was Section 15-1200.5 of the Trespass Law, and that law specifically says that abandoned is an unoccupied property suffering from other deficiencies such as utility shutoffs, it is unsecured, and there is property damage. In this situation, the only property damage was the standard damage that you have inside of a rental unit, and Mr. Colcroft, the plaintiff, actually stated in his deposition that the damage was there were a few holes in the wall that the previous tenant has left and that he was in the property repairing that to get the property ready to rent to another tenant. That's it, and you would only know that damage if you're inside the property. There's no damage on the exterior of the property, there are no broken windows, the property was not unsecured. So it's vacant, payments haven't been made for several months, mail is being returned. What indication was there that this was not abandoned? That's an indication that it's vacant, but I don't think vacant and abandoned are the same. Vacant just means no one is in the property, the property is unoccupied. So does the mortgagee have to wait until windows start getting broken and the copper gets stripped out and fixtures get stripped out and so on? The mortgagee has to follow the Illinois Mortgage Foreclosure Law and the Trespass Law, and those laws require that the mortgagee go before the court and get an order to allow the mortgagee to proceed. The mortgagee can do it by just getting an order to proceed to secure the property to protect their interest, or they can do it by requesting the court appoint a receiver to care for the property. Where would they have served, Mr. Cockcroft? Where would they have served? I believe... With process since mail at the location was getting returned. I don't think there was any problem locating Mr. Cockcroft. Mr. Cockcroft was actually served at his home, and that was information that both HSBC Bank USA had and information that the lawn servicer, Bank of America, had. So this wasn't his primary residence? No, it was not. And there was even, also in part of what was presented to the district court, there's even a photograph of the property at around the time of the break-in from Bank of America, and it shows the exterior of how the property is well maintained. It shows a very clean lawn, and it shows a for sale sign. Mr. Cockcroft had the property up for sale. So there was absolutely no sign or evidence that the property was abandoned. How many payments did you miss, did he miss? I believe the record shows the last payment was around August 2008, or the summer of 2008. How many was it? I believe it was two payments. Well, there had been two payments made around May and June that had been returned for non-sufficient funds, right? And then nothing further, right? I'm not completely sure of that, because at the timing of these payments, it's like payments were being sent while some were being returned and some were not. I think what the records show is that the last was considered as August 1st, 2008. But you're claiming that it was merely vacant and not abandoned, that's right? Yes. And in this case, you think your client is entitled to have the property free and clear, is that right? No, that is not at all what we're saying, no. We're saying that my client has the right to pay the proper party, or the proper party has the right to foreclose if my client is unable to pay. And we're saying that HSBC Bank is not the proper party. So where are the state foreclosure proceedings at this point? They're stayed, pursuant to the outcome of these proceedings. So why should we interfere with this? I mean, isn't the identity of the proper party something to be litigated in the foreclosure action? Yes, I believe that is one of the claims in the foreclosure action. We're not active in that action, but we have reviewed the case and my office has, and that is one of the claims, yes. Okay. But didn't the district court note that you hadn't made mortgage payments for over a year? For over a year? A year from what time? I'm not sure I understand the question. Up to the time where you said that they trespassed. I believe, yes, the district court does make a statement that, well, no, the district court actually does not state that. What the district court does is make a statement that if there is no payment, if there is a payment default, then pursuant to paragraph nine of the mortgage, then the mortgagee would have the right to go in to secure the property. But the district court does not actually say that there is a default. The district court never says that. The district court didn't say that or indicate that you failed to make a mortgage payment for over a year. I don't think so. If Your Honor can point to specifically where that statement is made, I can confirm, but I don't believe that was the statement that Judge Kennelly made. I believe the statement that Judge Kennelly specifically made was that if that paragraph nine of the mortgage could be in vogue if there is a default. When this litigation... I think he may have made that statement in connection with your Illinois consumer fraud case about the letter. Okay. My apologies. I thought you were talking about the trespass. The letter that was sent in. I know. But the entry occurred around August of 2008, a couple of months after payment stopped. But you also have a claim based on this letter in November of 2009 where HSBC said it told your folks it couldn't find their records, right? Correct. Can you explain to me how your clients relied upon that letter to their detriment? Because the co-profits were attempting to rescind the loan at that time, and to rescind the loan, the rescission needs to go to the proper parties. And so the co-profits were trying to ascertain who those proper parties were. Attempting to rescind the loan on what basis? They attempted to rescind the loan for an issue regarding lack of disclosures and issues regarding truth and lending violations. Wasn't it a little late at that point? And were they ready to restore the money that had been loaned?  So how were they going to rescind the loan? Well, I'm telling you what they were attempting to do. They were attempting to rescind the loan. And I'm trying to understand, for your consumer fraud case, how they could have been misled to their detriment by HSBC's failure to locate the records. Because they thought they had the right to rescind the loan. It was not the district court rule that they no longer had that right to rescind the loan, pursuant to an issue of an inability to prove up the truth and lending violation, pursuant to an audit report with a company called Equitas that was unable to be proved up. But that's three years after the fact. Prior to that fact, and with that report, they certainly had reason to believe that they had the right to rescind the loan. Thank you very much. Thanks to both sides, and the court will take the matter under advisement.